IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 1993 SESSION



**FILED**

**February 2, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

STATE OF TENNESSEE,        )
                                 )    No. 01C01-9307-CC-00224
     Appellee,              )
                                 )    Williamson County
v.                           )
                                 )    Hon. Henry Denmark Bell, Judge
CATHERINE WARD,         )
                                 )    (Promoting Prostitution)
     Appellant.             )

For the Appellant:

David L. Raybin
Attorney at Law
424 Church Street, 22nd Floor
Nashville, TN  37219
(Appeal Only)

R. Ray Galbreath
Attorney at Law
901 Stahlman Building
Nashville, TN  37201
(Trial Only)

For the Appellee:

Charles W. Burson
Attorney General & Reporter

Christina S. Shevalier
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Joseph D. Baugh
District Attorney General

Timothy L. Easter
Asst. District Attorney
General
Post Office Box 937
Franklin, TN  37065

OPINION FILED:_____

**REVERSED & REMANDED**

**Penny J. White**
Judge

**O P I N I O N**

Appellant, Catherine Ward, was convicted of promoting prostitution, a Class E felony, by a jury. The trial court found that appellant was a standard offender and imposed a Range I sentence consisting of a fine of $3,000 and confinement for one year in the Department of Correction.

Appellant presents seven issues for review. She contends that:

1.  the state failed to prove that appellant was knowingly promoting prostitution and that the conduct constituted sexual activity within the meaning of the statute;

2.  the trial court abused its discretion in permitting a prosecution witness to testify that two prostitutes entered guilty pleas in violation of Tennessee Rules of Evidence 803(22);

3.  the trial court abused its discretion in permitting a prosecution witness to testify that a prostitute told her that appellant was her "boss";

4.  the search of appellant's purse and motor vehicle violated the Fourth Amendment to the United States Constitution and Article 1, § 7 of the Tennessee Constitution;

5.  the trial court abused its discretion in permitting a Davidson County officer to testify to the results of his investigation into the prostitution business in Davidson County;

6.  she was denied her constitutional right to the effective assistance of counsel by trial counsel; and

7.  the trial court committed error in refusing to suspend appellant's sentence and grant her probation.

After a careful review of the record, we find that the glaring deficiencies of trial counsel denied appellant her

**2**

constitutional right to a fair trial. Appellant's conviction must be reversed and the case remanded for a new trial.

In view of our holding, we will discuss issues 2, 3, 4, 5, and 6 in connection with the ineffective assistance of counsel. Since the case is being remanded for new trial, we need not consider whether the trial court erred by sentencing appellant to serve one year in the state penitentiary rather than granting probation or some other form of alternative sentencing.[1]

## I. FACTS

Catherine Ward was the owner and operator of a dating and escort service in Nashville. She had thirty-nine different listings in the yellow pages of the Nashville phone book. Although each listing was in a different name and had a different telephone number, all of the thirty-nine telephone numbers reached appellant's place of business and were answered by the same person.

In this case, on the evening of October 3, 1991, Jimmy Hester, a detective, called Beth's Touch of Class. The telephone number was listed in appellant's name and was answered at appellant's place of business. The officer made arrangements for two women to come to his room at the Hilton Hotel in Brentwood. After several telephone calls, Sherman Ann "Sherrie" Swartz and April Lynn Ashworth came to the room. Swartz collected the agreed amount of $350. After undressing in the bathroom, the two women

---

[1]We note, however, that the trial judge failed to follow the guidelines in State v. Ashby, 823 S.W.2d 166 (Tenn. 1992). In fact, the trial judge never considered any form of alternative sentencing. As a Range I, standard offender, sentenced for a Class E felony to a one-year sentence, appellant is presumed to be a favorable candidate for alternative sentencing absent evidence to the contrary. Tenn. Code Ann. § 40-35-102(6)(1995 Supp.). If appellant is convicted upon retrial, the trial court should consider the criteria for alternative sentencing found in the statutes and should place findings on the record.

lay in bed facing each other. They had not touched one another when Hester signalled officers in an adjoining room to arrest the two women. The women were arrested, booked at the Brentwood Police Department, and issued citations for prostitution. Agent Hester testified that the two women later pled guilty to prostitution, a misdemeanor offense.[2]

Later that night, Mary McGaughy, a detective who participated in the sting, saw Swartz in the parking lot of the Hilton Hotel. Swartz was standing beside a car talking to the driver. When McGaughy asked Swartz what she was doing, Swartz told her that she was talking to her boss. McGaughy told Swartz to leave the parking lot. McGaughy learned that appellant was the driver of the motor vehicle. She retained appellant's driver's license until she informed the Brentwood police officers who were participating in the investigation. An officer searched appellant's purse and seized a pager, an address book, a quantity of cash, and appellant's business cards. A search of the interior and trunk of the vehicle uncovered nothing of interest. Appellant was arrested and charged with promoting prostitution.

Over objection, Sergeant Joe Blakley of the Metropolitan Police Department testified at length concerning his involvement in a state-wide task-force investigating prostitution. He also detailed the results of a search he conducted at appellant's business address approximately one year prior to appellant's arrest

---

[2]Only Agent Hester testified to these events. The person with whom he spoke at Beth's Touch of Class was never identified. The second woman who returned his calls was identified only as "Crystal." She did not testify. Neither Swartz nor Ashworth testified at trial. The state entered a video tape made while Swartz and Ashworth were in the hotel room into evidence. (The camera was disguised as a lamp.).

in this case. Sergeant Blakley observed the Swartz and Ashworth arrest but did not observe the arrest or search of appellant.

Appellant described her business as "legitimate." A written agreement which she had with each person who worked for her designated the person as an independent contractor, not an employee, and provided that the person would not engage in any illegal conduct. The women she employed were engaged to escort men to parties, dinners, and other social events and to provide conversation and companionship. Occasionally, the women acted as models. On the night of the arrests, appellant was advised that Swartz and Ashworth escorted a man to a dinner party at the Hilton. When Swartz and Ashworth failed to check in with the dispatcher and did not respond to their pagers, appellant was notified. She then went to the hotel to see if they needed assistance. Her arrest followed.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at the trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1990).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v.

_Cabbage_, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. _Liakas v. State_, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. _State v. Cabbage_, 571 S.W.2d at 835.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. _Id_. In _State v. Grace_, 493 S.W.2d 474 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." _State v. Grace_, 493 S.W.2d at 476.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, _id_., appellant has the burden of illustrating why the evidence contained in the record is insufficient to support the verdicts returned by the trier of fact. _State v. Tuggle_, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from the facts, are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. _State v. Tuggle_, 639 S.W.2d at 914.

6

In this case, the evidence contained in the record is sufficient to support a finding by a rational trier of fact that appellant was guilty of promoting prostitution beyond a reasonable doubt. Tenn. R. App. P. 13(e); <u>Jackson v. Virginia</u>, 443 U.S. 307, (1979). Agent Hester called the business admittedly owned by appellant and spoke to a "dispatcher." "Crystal" returned his call. When the agent requested two women, Crystal said she did not know what to charge but she said she would find out and call Hester back with a price. The dispatcher in turn called Hester, advised him that the woman who called him was not comfortable doing what Hester wanted, and that the company was trying to find two "girls" who would meet his requirements.[3] Later, Swartz and Ashworth appeared at Hester's room. Hester paid Swartz for the services to be performed, the two women undressed, and climbed into bed.

Appellant admitted that she was the sole owner and proprietor of Beth's Touch of Class, one of the thirty-nine entities that comprised the escort service. When a "gentleman" called any of the thirty-nine numbers, the call reached the same dispatcher. On October 3, 1991, the fees charged were $120 for a half hour and $175 for a full hour of one girl's time, and Hester paid the two women a total of $350. Although the women never engaged in any sexual acts with each other or with Hester, their activities certainly support an inference that they were about to engage in sexual activity and that the escort service was aware of that activity. When all of the evidence presented at trial is

_____

[3]Neither the dispatcher nor the officer made specific reference to any sexual activity. However, the circumstances and the double entendres contained in the conversations are sufficient to support the inference that Hester was seeking to watch two "girls" perform lesbian sex.

considered, the evidence is sufficient to support appellant's conviction for promoting prostitution beyond a reasonable doubt.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

After her conviction, appellant obtained new counsel. In a motion for new trial, counsel contended that, among other errors, appellant had been denied effective assistance of counsel at trial because of the following deficiencies in representation:

1. the failure to file a pretrial motion to suppress as evidence a pager, address book, business cards, and approximately $787 in cash, which were obtained from appellant's purse by a Brentwood police officer;

2. the failure to object to Jimmy Hester's testimony that the two women who came to the hotel on the evening in question had been convicted of prostitution following their guilty pleas to the offense;

3. the failure to object to the testimony of Mary McGaughy that Sherman Ann "Sherrie" Swartz told her that she was talking to her "boss" while standing next to appellant's motor vehicle;

4. the failure to object to the testimony given by Sergeant Joe Blakley of the Metropolitan Police Department; and

5. the failure to move the trial court pretrial for an instruction on the punishment for the principle offense alleged in the presentment and the lesser included offense.

The trial judge found that while some of the testimony complained of should have been excluded, the erroneously admitted evidence was harmless in the context of appellant's trial. The judge concluded that defense counsel's actions or failure to act had been consistent with the defense theory that appellant was engaged in a legitimate business and that any wrongdoing had been

8

committed by Swartz and Ashworth without her knowledge or encouragement. Therefore, the court concluded that appellant was not denied effective assistance of counsel. We respectfully disagree.

## 1. LEGAL STANDARDS

When there is a post-trial hearing on the issue of whether the accused was denied the effective assistance of counsel, the findings of fact made by the trial court at the conclusion of the hearing have the weight of a jury verdict. Consequently, this court is bound by the trial court's findings of fact unless the evidence contained in the record preponderates against the judgment entered by the trial court.[4]

Since the trial court found that appellant failed to establish she was entitled to a new trial on this ground, this court must review the record to determine whether the trial court's findings of fact preponderate against the judgment entered in this case.[5] In doing so, this court is bound by certain well-established rules governing appellate review.

> First, this Court cannot reweigh or reevaluate the evidence; nor can we substitute our inferences for those drawn by the trial judge. Second, questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are resolved by the trial judge, not this Court. Third, appellant has the burden in this Court of illustrating why the evidence contained in the record

---

[4]Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1991).

[5]Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1990); Brooks v. State, 756 S.W.2d 288, 290 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1988); Vermilye v. State, 754 S.W.2d 82, 84 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1987).

>           preponderates against the judgment entered by
>           the trial judge.

Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1990).


Before an accused is entitled to a new trial on the ground that trial counsel's representation was ineffective, the accused must prove by a preponderance of the evidence that (a) the services rendered or advice given by counsel fell below the "range of competence demanded of attorneys in criminal cases,"[6] and (b) the unprofessional conduct or errors of counsel "actually had an adverse effect on the defense."[7]


In determining whether the accused has factually established a deprivation of the constitutional right to the effective assistance of counsel, we recognize that neither the State nor Federal Constitution requires perfect representation.[8] Second, it is not our function to "second guess" trial counsel's tactical and strategic choices pertaining to matters of defense unless these choices are made without knowledge of the relevant facts or the law applicable to the issue.[9]   "[T]he defense

---

[6]Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

[7]Strickland v. Washington, 466 U.S. 668, 693, (1984); Williams v. State, 599 S.W.2d 276, 279 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1980).

[8]Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Vermilye, 754 S.W.2d at 85.  In State v. Martin, 627 S.W.2d 139, 143 (Tenn. Crim. App. 1981), perm. to appeal denied, (Tenn. 1982), this court said "[t]here are no perfect lawyers."  In Cureton v. Tollett, 477 S.W.2d 233, 235 (Tenn. Crim. App. 1971), cert. denied, (Tenn. 1972), this court said: "In the course of a trial, many legal situations occur which present choices in many directions.  The lawyer must decide which course to take.  [The lawyer] is not required to be infallible."

[9]State v. Cooper, 849 S.W.2d 744, 746 (Tenn. 1993); Hellard v. State, 629 S.W.2d at 9; Vermilye v. State, 754 S.W.2d at 85; see also State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App.), (continued...)

10

attorney's representation, when questioned, is not to be measured by '20-20 hindsight.'"[10]  Third, an accused is not deprived of the effective assistance of counsel because a different procedure or strategy might have produced a different result.[11]  Fourth, the entire record, not "isolated acts or omissions," must be considered in determining whether the petitioner was adequately represented.[12]  As this court said in State v. Mitchell:

> Protection of an accused's right to effective assistance of counsel does not require that his attorney's every act or omission claimed to be deficient be examined in isolation.  The issue is whether considering the case as a whole, including performance by the accused, counsel provided reasonable professional assistance. . . .  As stated in Strickland v. Washington, 'the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.'[13]

---

(...continued)
perm. to appeal denied, (Tenn. 1991); Sherrill v. State, 772 S.W.2d 60, 62 (Tenn. Crim. App. 1988), perm. to appeal denied, (Tenn. 1989); Smith v. State, 757 S.W.2d 14, 18 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1988); State v. Swanson, 680 S.W.2d 490 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1984); McBee v. State, 655 S.W.2d 191, 193 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1983); Tolliver v. State, 629 S.W.2d 913, 914-15 (Tenn. Crim. App. 1981), perm. to appeal denied, (Tenn. 1982).

[10]Hellard v. State, 629 S.W.2d at 9.

[11]Tolliver v. State, 629 S.W.2d at 914-15;  Williams v. State, 599 S.W.2d at 279-80.  In Long v. State, this court said:

> Not every mistake of judgment or misconception of law made by defense counsel will deprive the accused of his constitutional right to effective representation, nor is the accused deprived of such right because a different procedure or strategy upon the part of counsel might have produced a different result.

Long v. State, 510 S.W.2d 83, 88 (Tenn. Crim. App.), cert. denied, (Tenn. 1974)(citations omitted).

[12]State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1988); Long v. State, 510 S.W.2d at 88.

[13]753 S.W.2d at 149 (citations omitted).

Fifth, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."[14] Thus, petitioner must overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[15]

## 2. FAILURE TO FILE MOTION TO SUPPRESS

Appellant argues that Lieutenant Jones, the coordinator of this undercover operation, arrested her while searching her purse. She contends that trial counsel was ineffective in failing to seek suppression of this evidence. The state argues that appellant was arrested before Jones searched the purse and vehicle. In the alternative, the state argues that this evidence, consistent with the operation of a legal dating service, was not prejudicial to appellant.

Since no motion to suppress was filed, and consequently no hearing conducted, the facts surrounding the search and seizure are sketchy. It is impossible for us to say without question that the evidence should have been suppressed. It is clear, however, that defense counsel should have filed a motion to suppress. The officers had no search warrant. No exigent circumstances are apparent. Therefore, the timing of the arrest and the basis for the arrest are critical to the legitimacy of the search. A more fully developed record of the circumstances surrounding the search would have allowed an analysis of the suppression issue.

---

[14]Strickland v. Washington, 466 U.S. at 689.

[15]Strickland v. Washington, 466 U.S. at 689. As the United States Supreme Court said in Strickland: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

Appellant has the obligation of proving the elements of ineffective assistance of counsel. <u>McBee v. State</u>, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). Thus, appellant would have to establish that counsel was deficient in failing to file the motion, and that, the failure prejudiced appellant. At the post-conviction hearing, appellant should have offered the evidence which would have been offered had a suppression motion been filed. We could have before us a record sufficient to enable us to consider whether the failure to file the motion prejudiced appellant. On this insufficient record, however, we cannot conclude that the failure to file a motion to suppress was a deficiency on the part of counsel or that it prejudiced appellant in this case.

### 3. FAILURE TO OBJECT TO EVIDENCE ON CONVICTIONS

During the direct examination of Agent Jimmy Hester, the following colloquy occurred:

> Q.   [Were] Swartz and Ashworth
>      . . . arrested for prostitution that
>      night?
>
> A.   Yes, sir. They were issued
>      citations and they were taken to the
>      Brentwood Police Department and
>      fingerprinted and photographed,
>      interviewed and then issued a
>      citation.
>
> Q.   And subsequently those two pled
>      guilty to that charge; did they not?
>
> A.   Yes, sir.

Trial counsel did not object to this testimony.

Appellant argues that "the State established one of the elements of the offense by the hearsay convictions of the two women when there was absolutely no opportunity for the defendant to confront or cross-examine these two women as to why they 'plead

13

guilty' to prostitution."  She further argues that this evidence was "devastating against the defense" and cannot be considered harmless in the context of this case.  The trial judge found and the state acknowledges that the admission of this evidence violated the Tennessee Rules of Evidence.  However, the state argues that the admission of this evidence was harmless because there "was ample proof presented at trial that the sole reason the two women were in the hotel room was to engage in prostitution."

This evidence was hearsay.  It is not admissible as an exception under Tennessee Rules of Evidence 803(22).[16]  Further, since testimony was the only direct evidence of the women's intent to engage in prostitution, it was not harmless.  Since neither woman testified at trial, appellant could not confront or cross-examine the witnesses.  The admission was error and prejudiced appellant.

Although not directly addressed in this appeal, we are compelled to address other parts of Hester's testimony since it may well arise upon retrial.[17]  Agent Hester related numerous statements made during his conversations with the "dispatcher," "Crystal," and

_____

[16]That rule provides:

> Judgment of Previous Conviction. -- Evidence
> of a final judgment adjudging a person guilty
> of a crime punishable by death or imprisonment
> in excess of one year to prove any fact
> essential to sustain the judgment, but not
> including, when offered by the prosecution in
> a criminal case for purposes of other than
> impeachment, judgments against persons other
> than the accused.  The pendency of an appeal
> may be shown but does not affect
> admissibility.

[17]This issue, which concerns the admissibility of the statements made by the dispatcher, "Crystal," Swartz, and Ashworth, was raised in appellant's motion for new trial.  It was overruled without explanation in the trial judge's order.

**14**

the two women who came to the hotel room. Nearly all were introduced for "the truth of the matter asserted" and are statements, "other than one made by the declarant while testifying at the trial or hearing." Tenn. R. Evid. 801(c). Unless an exception to the hearsay rule is available, such statements are not admissible. Defense counsel objected at one point and the trial judge agreed that the testimony was hearsay. After a brief jury-out discussion with counsel, the trial judge decided to admit the testimony so long as the prosecution "could connect it up" later. The state justified the evidence as part of the "res gestae." The trial judge apparently believed the evidence to be admissible as agent statements under Rule 803 (1.2)(D).

Neither ground supports the admission of most of the statements related by Hester. "Res gestae" is an obsolete term often inaccurately applied to excited utterances.[18] The Tennessee Rules of Evidence contain no "res gestae" exception.[19] Further, Rule 803(1.2)(D), of limited applicability in criminal cases, applies only when the employees are acting within the scope of their employment and when the statements are against the interest of the employees as well as the employer. Since the testimony does not qualify as either an excited utterance or an admission, it was inadmissible. Much of the testimony should have been excluded.

### 4. FAILURE TO OBJECT TO HEARSAY STATEMENTS

Agent McGaughy testified without objection to a statement identifying appellant as Swartz's boss. Appellant contends, and the state agrees, that the statement attributed to Swartz was

---

[18]See Neil P. Cohen, Donald F. Paine, Sarah Y. Sheppeard, Tennessee Law of Evidence § 803(2) (1990).

[19]State v. Smith, 868 S.W.2d 561, 576-77 (Tenn. 1993).

introduced to prove that appellant was Swartz's boss, i.e., the truth of the matter. The trial judge held, however, that the admission of the hearsay evidence was harmless since there was ample evidence to show that an employer-employee relationship existed between Swartz and appellant.

Here, the state argues that the evidence was an admission admissible under Rule 803(1.2)(D).[20] Whether Swartz and Ashworth were agents or servants of appellant was a contested issue at trial. Swartz and Ashworth executed contracts that stated that they were independent contractors, not employees. Apparently, appellant did not withhold payroll taxes from the women. The viability of the admissions exception under these circumstances is questionable. A timely objection by counsel would have required the court to exclude this statement which served as a basis for the state's proof of an essential element.

5. EVIDENCE OF DAVIDSON COUNTY INVESTIGATION

During the months of July through October of 1990, more than a year prior to the incident in question, the Metropolitan Police Department began an investigation into prostitution trafficking in Davidson County. The investigation included the dating and escort services listed in the yellow pages of the

---

[20]The rule provides:

The following are not excluded by the hearsay rule:

(D)   a statement by an agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship under circumstances qualifying the statement as one against the declarant's interest regardless of declarant's availability . . . . Tenn. R. Evid. 803 (1.2).

Nashville telephone book.  There were approximately 140 individual telephone listings for these businesses.  However, all of these listings were to businesses operated by eight individuals.  Appellant had thirty-nine listings under separate business names.  She paid the telephone bills for all of these businesses.  Additionally, all of these telephone numbers were answered by an individual referred to as "a dispatcher" at appellant's place of business.

On October 11, 1990, officers executed a search warrant at appellant's place of business in Davidson County.  Several records were confiscated from the business.  The dispatcher was in possession of a "pill."  Also, Metropolitan police officers contacted "various sources throughout Davidson County" and reviewed "different written complaints sent in by different citizens in Davidson County."

Trial counsel contested the relevancy of the testimony regarding these investigations.  In the motion for a new trial and in this court, appellant contends that several portions of the testimony were not admissible on various grounds.  Each of appellant's grounds will be addressed.

Appellant contends that the testimony regarding the 1990 investigation given by Sergeant Blakley was not relevant to the offense of October 3, 1991 since it was too remote in time to bear on the controverted factual issues.  The term "relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Tenn. R. Evid. 401.  As a general rule, relevant

17

evidence is admissible.  However, there are exceptions.  The evidence is not admissible if it is barred by the United States Constitution, the Tennessee Constitution, the Tennessee Rules of Evidence, or other rules of general application.  Tenn. R. Evid. 402.  Also, if the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, the evidence should not be admitted.  Tenn. R. Evid. 403.  "Relevant evidence" may also be excluded if the probative value of the evidence is substantially outweighed by the danger of undue delay, waste of time, or needless presentation of cumulative evidence. Tenn. R. Evid. 404.

Basic to the concept of relevance is the requirement that a lay witness have "firsthand knowledge" about the subject matter of the witness's testimony.  Tenn. R. Evid. 602.  In the treatise, Tennessee Law of Evidence, the authors state:

> The personal knowledge rule of Rule 602 provides that . . . a witness is not competent to testify about facts unless the witness personally perceived those facts by use of the witness's five senses.

Neil P. Cohen, et al., Tennessee Law of Evidence § 602.1 at 2 & 3. However, there are two exceptions to this rule.  The rule does not apply to (a) the testimony of experts, Tenn. R. Evid. 702., 703; Adv. Comm. Comments, Tenn. R. Evid. 602, or to (b) admissions made by a party opponent.  Tenn. R. Evid. 803(1.2); Adv. Comm. Comments, Tenn. R. Evid. 602.

A witness must have the requisite personal knowledge to testify.  Tenn. R. Evid. 602.  On this record, it is difficult to decipher whether Sergeant Blakley had personal knowledge about much of his testimony.  Undoubtedly, some of his testimony came from

18

other officers, from individuals he interviewed, from what he read in reports, and from what he heard while listening to audio tape recordings. While ascertaining which is which is difficult, clearly much of the testimony was hearsay, once, twice, and three times removed. Neither Sergeant Blakley's participation in the investigation nor his role as lead investigator permitted him to testify to facts outside his personal knowledge.

Sergeant Blakley candidly admitted that he never talked with the dispatcher. Yet he testified to information gleaned from listening to the taped conversations between the undercover officers and the dispatcher and from what he read while reviewing "different written complaints sent in by different citizens in Davidson County." This testimony was inadmissible.

Despite the fact that his knowledge of the operation of the escort services was based primarily upon hearsay, Sergeant Blakley testified as to the operations, the role of the dispatcher, and the questions asked by the dispatcher. He testified regarding the lease and purpose of an apartment and visitors to the apartment despite his lack of personal knowledge.

Defense counsel should have challenged Sergeant Blakley's testimony because of his lack of personal knowledge. At the least, counsel should have voir dired the witness to ascertain which, if any, information was based on personal knowledge and which was obtained from other sources. Counsel's failure to do so resulted in the admission of highly prejudicial, largely inadmissible testimony.

Additionally, although Sergeant Blakley was not qualified as an expert witness, he was permitted to express his opinion

regarding the nature of the escort service business.  The following colloquy took place during Blakley's direct examination:

> Q.   During your investigation did you learn how these operations [escort services] worked?
>
> A.   Yes, sir.  During the course of the operations or this investigation in the preliminary stages we did contact various sources throughout Davidson County and also were reviewing different written complaints sent in by different citizens in Davidson County.
>
> In reading these reports and checking and verifying this information, it was obvious to us that most if not all of these listed escort services were involved in prostitution.
>
> Q.   How did you arrive at that?
>
> A.   Okay.  The main point of it was -- is that we had several irate wives who were calling and wanting to know what different businesses were, and when they called them to check on their credit card receipts were given vague answers and hung up on.  We also talked to various individuals who at one time or another had worked for some of these escort services as escorts, and they had explained to us the terminology and the methodology of the escort service business.
>
> MR. GALBREATH:   I'm going to object to the hearsay there, Your Honor.
>
> THE COURT:   Sustain the objection.

Opinion testimony is generally limited to witnesses who qualify as experts in the subject matter of their respective testimony.  Tenn. R. Evid. 702.  On occasion, lay witnesses may express opinions when certain prerequisites are established.  Tenn. R. Evid. 701.  Lay opinion, however, is fairly circumscribed.  As the Advisory Commission to the Tennessee Rules of Evidence commented:

> The rule rather specifically circumscribes the area where a lay witness can testify to opinions as opposed to facts. The Commission believed that the instances would be

rare where a witness could not convey thoughts to the jury by enumerating facts, leaving it to the jurors to draw inferences.

Add. Comm'n Comments, Tenn. R. Evid. 701.

Before a lay witness may express an opinion or inference, the party presenting the witness must establish:

a) the witness has "personal knowledge" of the facts or subject matter that forms the basis for the opinion or inference, Tenn. R. Evid. 602;

b) the opinion or inference to be expressed by the witness does not require the knowledge or skills of an expert, Tenn. R. Evid. 701(a)(1);

c) the witness cannot readily and with equal accuracy relate what has been perceived without expressing it in the form of an opinion or inference, Tenn. R. Evid. 701(a)(2); and

d) the opinion or inference to be expressed by the witness will not mislead the trier of fact to the prejudice of the adverse party, Tenn. R. Evid. 701(a)(3).

In this case, the state did not attempt to have Sergeant Blakley qualified as an expert in the field of prostitution. Based on the testimony elicited from him, it is doubtful that he possessed the training, knowledge, education, or experience to qualify as an expert. Consequently, Sergeant Blakley should not have been permitted to express the opinion that "most if not all of these listed escort services were involved in prostitution" unless that opinion was proper for expression by a lay witness and unless the state established the prerequisites for lay opinion. We find that neither condition required for the admission of lay testimony

21

was present in this case. Trial counsel again failed to object or to raise the absence of the required conditions, thereby allowing the admission of prejudicial, inadmissible, crucial evidence.

In addition to inappropriate hearsay and opinion testimony, Sergeant Blakley testified to alleged criminal conduct for which appellant was never charged. Sergeant Blakley was asked to detail the sting operations his department conducted. He testified:

> A.  We ran two separate operations in August and September of 1990. These operations were done to further our probable cause to issue search warrants, which we subsequently issued. At that time we did call these numbers listed to the R & C Enterprises, and at that time did talk with [the] dispatchers.
>
> And I believe in September of 1990 our officers asked for show dates, and the dispatcher at 918 Shelby when we asked for this service directly, she said that she had two girls --
>
> MR. GALBREATH:  Objection again, Your Honor, hearsay.
>
> THE COURT:  This is when?
>
> THE WITNESS:  September of 1990.
>
> . . .
>
> THE COURT:  Overrule the objection.
>
> Q.  Go ahead, Sergeant.
>
> A.  The undercover officers were advised that two girls were available but they couldn't get them both together. Subsequently, later -- a few minutes later we called back to another number in that list of phone numbers, and at that time we talked to the same female dispatcher or at least the voice appeared to be the same.

22

Our undercover asked for, again, a show date, two girls. At that time the dispatcher told them you have already called one time and we're trying to get you two girls; we just can't get them together right now. And he said well, I just thought I called another number. And she said no, we have all thirty-nine lines running in here.

Q. And this was to 918 Shelby Avenue --

A. Yes, sir.

Q. -- -- dispatcher, owned and operated by this defendant?

A. Yes, sir.

Q. Go ahead.

A. Then I believe it was on the 9th of October, 1990, we again called several of the listed numbers to R & C Enterprises. At that time our undercover officers asked for a sexual preference of half and half.

At that time the dispatcher linked our undercover officer with a female named Vanessa. At that time the officer advised Vanessa to come to the motel. She came to the motel. She quoted what she would perform and the amount of money.

At that time the undercover officer under our direction told the girl that he did not want to go through with it, he was married and before any money changed hands or anything like that we dismissed the girl. She left. At that time surveillance officers who were placed outside this location followed Vanessa back to 308 Plus Park Boulevard.

Q. Was it your department's plan to not go through with the sexual act as it turned out? Was that what you all were planning on doing?

A. That's correct. All we wanted was to find out if in fact these girls were offering sexual favors and if they were charging money for this.

Q. And did these girls offer sexual favors?

A. Yes, sir, they did.

23

This evidence, elicited during Sergeant Blakley direct examination, clearly violated Rule 404(b), which provides:

> Other Crimes, Wrongs, or Acts.-- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait.   It may, however, be admissible for other purposes.  The conditions which must be satisfied before allowing such evidence are:
>
> (1)   The court upon request must hold a hearing outside the jury's presence;
>
> (2)   The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3)   The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

Through discovery, defense counsel should have known that this evidence was available to the state and should have requested a jury-out hearing to determine its admissibility.  Even if the state has asserted that some legitimate purpose for the introduction of the other crimes evidence, the court would still be required to balance the probativeness with the danger of unfair prejudice arising from admission. Given the nature and timing of this other crimes evidence, its admissibility is suspect.

The record establishes that the representation of trial counsel was deficient in the numerous respects that we have

detailed.[21]   Counsel's services fall far below "the range of competence demanded of attorneys in criminal cases."  State v. Melson, 772 S.W.2d 417, 419 (Tenn. 1989).  Therefore, appellant has satisfied the first prong of the Strickland test.  To establish the prejudice prong, appellant must demonstrate that "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different."  Strickland v. Washington, 466 U.S. 694 (1984).  A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome."  Id.

The sheer volume of inadmissible, prejudicial evidence introduced at this trial is more than sufficient to undermine our confidence in the outcome.  Indeed, we have difficulty imagining this trial without all the inadmissible evidence.  Virtually all of Sergeant Blakley's testimony was based on hearsay.  At best, its relevance was marginal.  His opinions should have been excluded. Tenn. R. Evid. 701.  The evidence of other crimes occurring more than a year earlier should have been subjected to Rule 404's

[21]Appellant also argues that trial counsel's failure to request a jury instruction on the possible sentence in this case constituted ineffective assistance of counsel.  The flaw in this argument is that the only offense submitted to the jury was the promoting of prostitution.  Consequently, the only possible punishment was the punishment prescribed for this particular offense.  An instruction on the possible punishment for an offense is only helpful when the evidence adduced at trial supports an instruction on one or more lesser included offenses.  If the jury finds that the accused is guilty, it may also feel that the harsh punishment for the principal offense is inappropriate.  Thus, the jury, having been advised of the punishment for the lesser included offenses, may return a verdict of guilt for a lesser included offense because it feels the punishment is more appropriate to punish the criminal conduct. Conversely, if the trial court finds, as here, that the principal offense is the only crime supported by the record, an instruction on the possible sentence for the offense will not benefit the accused.  Of course, this court is not unmindful of the potential argument that a jury may acquit an accused if it feels the only punishment for the offense is too harsh for the accused's criminal conduct.  Such a scenario is highly unlikely.  The failure of trial counsel to make such a request did not prejudice appellant in this case.

precautionary tests. Agent McGaughy's testimony regarding Swartz's identification of appellant as "her boss" was hearsay. Swartz's and Ashworth's guilty pleas were irrelevant and highly prejudicial. The description of these women's activities with Jimmy Hester, but for the inadmissible hearsay which connected them to appellant, was only tangentially relevant. The detailed history of prostitution in Brentwood was not connected to appellant and should not have been admitted. Yet counsel neglected to challenge most all of this evidence.

When this unchallenged inadmissible evidence is compared with the remaining evidence, it becomes apparent that counsel's deficient performance prejudiced appellant. Absent the inadmissible evidence, the proof in appellant's case would have been highly circumstantial and could easily have yielded an acquittal.

Therefore, we conclude that counsel's numerous deficiencies affected the outcome of this trial. This case tried with competent counsel would not have resembled the case before us. Counsel's ineffectiveness deprived appellant of a fair trial.

Catherine Ward's conviction is reversed. The case is remanded to the trial court for a new trial.

_____
Penny J. White, Judge

CONCUR:

26

<u>(See Separate Dissenting Opinion)</u>
Joe B. Jones, Judge


_____
Gary R. Wade, Judge